REVCO DISCOUNT DRUG CENTERS, INC., APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Revco Discount Drug Centers, Inc. v. Lindley (1983), 6 Ohio St. 3d 172.]

(No. 82-1370—Decided August 10, 1983.)

*Messrs. Weston, Hurd, Fallon, Paisley & Howley* and *Mr. Lewis T. Barr,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. James C. Sauer* and *Ms. Barbara E. Vest,* for appellee.

*Per Curiam.* The first question presented in this appeal is whether any of the items of appellant's property subject to the 1980 assessment qualify for exemption from taxation pursuant to R.C. 5739.01 (E)(2). The second question is whether appellant's typewriters are exempt from taxation under the packaging exception contained in R.C. 5739.02 (B)(15). The final issue is whether the Board of Tax Appeals properly refused to rule on appellant's contention that it was entitled to a production exemption with respect to its typewriters.

R.C. 5739.01, at the time of the assessment, provided in pertinent part:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) * * * [T]o use or consume the thing transferred * * * directly in making retail sales * * *.

"* * *

"(P) 'Making retail sales' means the effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to transfer title to or possession of the item sold, but it does not include the delivery of items thereafter nor the preliminary acts of promoting or soliciting the retail sales other than the distribution of printed matter which displays or describes and prices the item offered for sale."

Pursuant to R.C. 5741.02 (C)(2), the exemptions from the sales tax in R.C. Chapter 5739 are also applicable to the use tax levied pursuant to R.C. Chapter 5741.

The Tax Commissioner has adopted guidelines to aid in interpreting the "direct use in retail sales" exemption contained at Ohio Adm. Code 5703-9-24, which at the time relevant herein provided:

"Tangible personal property which is to be used or consumed directly in making retail sales, may, when purchased by a person engaged in making retail sales, be purchased under a claim of exemption. Articles subject to such claim include show cases, equipment and shelves used to display merchandise for sales; store furniture and fixtures; supplies and equipment used in consummating retail sales; equipment for use or consumption in storing or preserving goods and merchandise in the sales area; and printed matter which displays or describes and prices the item offered for sale.

"This exemption does not apply to equipment used for general heating of the sales area, to fuels for such equipment, to any other supplies not used directly in making retail sales or not specifically used in storing or preserving goods and merchandise in the sales area, to delivery equipment, nor to items used to promote or solicit retail sales. Examples of items to which the exemption would not apply include lumber, wall board and similar items used as partitions whether in the retail rooms, display windows or elsewhere; janitor and cleaning supplies, fans, decorative items, items used in offices, stock or delivery rooms, outside signs, trucks or equipment used to deliver merchandise sold at retail, and advertising materials other than printed matter which displays or describes and prices the item offered for sale.

" 'Sales area' means any area in which retail sales are customarily made."

Initially, appellant contests the Board of Tax Appeals' finding that the pharmacy is not a "sales area." Appellant contends that the pharmacy qualifies as a "sales area" because "[t]he pharmacy is the place where the pharmacist makes the sale." The board rejected this contention, concluding that the pharmacy and its associated equipment were not used "directly in

making retail sales." The board stated that "* * * [t]his Board views the pharmacy area as a private work place necessary for a pharmacist's use in preparation of a final product for sale. The fact that the area and the items contained therein may be deemed essential, necessary, required or facilitative in the overall operation of the pharmacy cannot convert an indirect use into a direct use. * * *"

Appellant also contends that the board's finding that the pharmacy is not a "sales area" is inconsistent with its decision in *Hilton Hotels Corp.* v. *Bowers* (July 31, 1962), BTA No. 48023. Therein, the board held that the shelves holding liquor behind a bar were "used directly in making retail sales." The board did not specifically address the issue of whether the area behind the bar was a "sales area" in *Hilton Hotel* and, therefore, appellant's reliance on *Hilton Hotel* regarding its applicability to a "sales area" question is misplaced. This court has consistently held that it "* * * will not overrule board findings of fact which are based on sufficient probative evidence. R.C. 5717.04; see *Emery Industries* v. *Kosydar* (1975), 43 Ohio St. 2d 34 [72 O.O.2d 19]; *Highlights for Children* v. *Collins* (1977), 50 Ohio St. 2d 186 [4 O.O.3d 379]; *Hawthorn Mellody* v. *Lindley, supra,* [(1981), 65 Ohio St. 2d 47 (19 O.O.3d 234)] at page 49." *Southwestern Portland Cement Co.* v. *Lindley* (1981), 67 Ohio St. 2d 417, 421 [21 O.O.3d 261]. In light of this standard of review, the board's determination that the pharmacy is not a "sales area" is not unreasonable or unlawful. Accordingly, we do not disturb the board's determination that the refrigerators in appellant's pharmacies were not "equipment for use or consumption in storing or preserving goods and merchandise in the sales area."

The board did consider the *Hilton Hotel* case in determining whether pharmacy shelving could be exempted as "showcases, equipment and shelves used to display merchandise for sale." The board distinguished *Hilton Hotel,* noting that in a bar, a customer may select from the liquor displayed on the bar's shelves, whereas in a pharmacy, a customer may not select his purchase from a display of drugs on the shelf. A customer may only purchase what is authorized by prescription. The pharmacy shelving contains bulk amounts of pharmaceuticals from which the pharmacist prepares the prescription that is sold. For these reasons, the pharmacy shelving does not "display merchandise for sale" and the board's decision is not unreasonable or unlawful.

Appellant also argues that the lumber used to elevate the pharmacy, pharmacy shelving, tables, cabinets and prescription files are either "store furniture and fixtures" or "supplies and equipment used in consummating retail sales," under Ohio Adm. Code 5703-9-24. As the Board of Tax Appeals noted, the regulation must be read in conjunction with the statute which requires the items exempted to be used "directly" in making retail sales.

The board found that the shelves were used for the "convenience, benefit and accommodation of the pharmacist" and that the tables, cabinets and prescription files were several steps removed from the actual sale. This find-

ing is not unreasonable in view of the narrow construction given the "direct use" exemption.

The board determined that the lumber used to elevate the pharmacy was essentially used to emphasize certain floor space and not used directly in making retail sales. This is consistent with Ohio Adm. Code 5703-9-24, which states that lumber used for partitions is not exempt. This court reached the same conclusion with respect to materials for walls used as partitions in *Federated Department Stores* v. *Kosydar* (1976), 45 Ohio St. 2d 1 [74 O.O.2d 1].

Appellant contests the assessment of typewriters used to type prescription labels for several reasons. First, appellant argues that the typewriters are directly used in making retail sales because typewritten labels are required by law for each prescription it sells. This argument is without merit. The typewriters are not used "directly" in making a retail sale and the fact that the label is required by law does not affect that determination. Addressing a similar argument with respect to property which, by statute, was required to be used in mining operations, the court held in *Fyr-Fyter Co.* v. *Glander* (1948), 150 Ohio St. 118 [37 O.O. 432], at paragraph two of the syllabus:

"The fact that certain items of tangible personal property are required by law in mines or mining operations does not in and of itself exempt or except from taxation the sale or use of such items for such purpose."

This rationale applies with equal force to the case at bar. That appellant's typewriters are used to prepare labels required by law does not in and of itself exempt the typewriters from taxation.

Appellant next argues that the typewriters are exempt under the packaging exemption in R.C. 5739.02 (B)(15) which provides:

"Sales to persons engaged in any of the activities mentioned in division (E)(2) of section 5739.01 of the Revised Code, of packages, including material and parts therefor, and of machinery, equipment, and material for use in packaging tangible personal property produced for sale, or sold at retail. Packages include bags, baskets, cartons, crates, boxes, cans, bottles, bindings, wrappings, and other similar devices and containers and 'packaging' means placing therein."

To qualify for an exemption under this statute the property must be a "package," "material or parts therefor," or equipment used for placing property for sale in a package. The board's conclusion that the typewriters in question do not fit into these categories is reasonable.

Appellant further argued before the board that the typewriters were exempt as property used in the production of a prescription for sale under R.C. 5739.01 (E)(2). The board refused to consider this argument because appellant had not specified a claim of entitlement to an exemption as a producer in its notice of appeal. The board may not consider any error not specified in the notice of appeal. *Lenart* v. *Lindley* (1980), 61 Ohio St. 2d 110 [15 O.O.3d 152]; *Gochneaur* v. *Kosydar* (1976), 46 Ohio St. 2d 59 [75 O.O.2d

142]. Appellant contends this error was specified by the following paragraphs of its notice of appeal.

"2. The Tax Commissioner erred in failing to delete or subtract out purchases of typewriters and typewriter materials as required by law to make pharmacy sales.

"3. The Tax Commissioner erred in failing to delete or subtract out purchases of typewriters as equipment used in assembling a pharmaceutical package for sale, as applicable to the tax years in issue under O.R.C. Sec. 5739.02 (B)(15)."

Throughout its appeal, appellant claimed entitlement to exemption as a retailer. The general language of paragraph two above is insufficient notice that appellant also sought a production exemption. Similarly the fact that R.C. 5739.02 (B)(15) refers to R.C. 5739.01 (E)(2) (which contains, *inter alia,* the production exemption and retailing exemption) does not entitle appellant to claim an exemption for property used in production.

In its final proposition of law, appellant challenges the assessment with respect to the information centers and sign mounts. R.C. 5739.01 (P), provided that "[m]aking retail sales" did not include "* * * the preliminary acts of promoting or soliciting the retail sales other than the distribution of printed matter which displays or describes and prices the item offered for sale." This is repeated in Ohio Adm. Code 5703-9-24. The information centers and sign mounts are not printed matter, but only hold printed matter describing and pricing items for sale. Thus, the board did not err in determining that the information centers and sign mounts "themselves do not display or describe the item offered for sale."

For the reasons hereinbefore stated, the decision of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY and C. BROWN, JJ., concur.

LOCHER, HOLMES and J. P. CELEBREZZE, JJ., concur in part and dissent in part.

LOCHER, J., concurring in part and dissenting in part. Although I fully endorse the court's treatment of most of the issues presented in the case at bar, I cannot join with it in upholding the Board of Tax Appeals' decision concerning the taxability of appellant's typewriter purchases.

Federal law, *i.e.,* Section 352 (e), Title 21, U.S. Code, mandates that certain information on prescription labels be typewritten. Thus, appellant, if it is legally to make pharmaceutical sales, must have a typewriter. The typewriters which appellant employs in its operation are used exclusively to type the labels and, thereby, comply with the federal statute.

R.C. 5739.01 (E) provided, in pertinent part, that: " 'Retail sale' and

'sales at retail' include all sales except those in which the purpose of the consumer is * * * (2) * * * to use or consume the thing transferred * * * directly in making retail sales * * *." Curiously, the court finds that appellant's typewriters are not used or consumed "directly" in making retail sales. What could be of more direct use in making a retail sale, however, than an item which, if not used, would preclude the very consummation of the sales transaction? In the context of the case at bar, but for the typewriters, there could be no legal sale.

Notwithstanding the decision in *Fyr-Fyter Co.* v. *Glander* (1948), 150 Ohio St. 118 [37 O.O. 432], it is not only a violation of both the explicit language and the intent of R.C. 5739.01 (E) but also works a patent and fundamental injustice to assess appellant, as the majority does today, for purchasing an item which the lawful conduct of his profession necessitates. Consequently, I must dissent from that portion of the court's opinion which finds appellant's purchase of typewriters to be a taxable event.

HOLMES and J. P. CELEBREZZE, JJ., concur in the foregoing opinion.