NCR CORPORATION, APPELLEE, *v.* LINDLEY, TAX COMMR., APPELLANT.

[Cite as NCR Corp. *v.* Lindley (1985), 18 Ohio St. 3d 332.]

(No. 84-1118—Decided July 31, 1985.)

*Michael A. Pearl,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellant.

*Per Curiam.* At the time the sales taxes were paid,[1] R.C. 5739.01 provided in pertinent part:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) * * * [T]o use or consume the thing transferred * * * directly in making retail sales * * *."

The phrase "making retail sales" was defined in R.C. 5739.01(P) as follows:

" 'Making retail sales' means the effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to transfer title to or possession of the item sold, but it does not include the

---

[1] Appellee's refund application was for the period commencing January 1976 and ending December 1978.

delivery of items thereafter nor the preliminary acts of promoting or soliciting the retail sales, other than the distribution of printed matter which displays or describes and prices the item offered for sale."

In order to facilitate the determination of whether a purchase qualifies for the direct-use-in-making-retail-sales exemption, the commissioner promulgated guidelines, contained in Ohio Adm. Code 5703-9-24, which provided in part:

"Tangible personal property which is to be used or consumed directly in making retail sales may, when purchased by a person engaged in making retail sales, be purchased under a claim of exemption. *Articles subject to such claim include* show cases, equipment and shelves used to display merchandise for sale; store furniture and fixtures; supplies and *equipment used in consummating retail sales;* equipment for use or consumption in storing or preserving goods and merchandise in the sales area; and printed matter which displays or describes and prices the item offered for sale." (Emphasis added.)

Although conceding the tax-exempt status of the electronic terminals located in various locations throughout the Penney stores, the commissioner challenges the reasonableness and lawfulness of the decision of the Board of Tax Appeals exempting the concentrator and computer units. According to the commissioner, the primary function of this equipment is preparatory in nature; that is, the equipment is used to obtain price and credit information in order to determine whether a customer will be allowed to purchase a particular item. The commissioner then concludes that since the equipment obtains price and credit information in determining "whether or not the sale will even be made," the equipment is not being used directly in effectuating or consummating retail sales.

It is well-settled that the determination of whether an item of tangible personal property is used to promote or solicit a retail sale, as distinguished from effecting or consummating the sale, is a question of fact to be determined by the Board of Tax Appeals. *Highlights for Children v. Collins* (1977), 50 Ohio St. 2d 186, 189 [4 O.O.3d 379]; *Jewel Companies v. Porterfield* (1970), 21 Ohio St. 97 [50 O.O.2d 238]. In addition, we are mindful that in reviewing decisions of the Board of Tax Appeals, our scope of review under R.C. 5717.04 is limited to a determination, based upon the record, of whether the board's decision is unreasonable or unlawful, and not to act as a trier of fact *de novo. Citizens Financial Corp. v. Porterfield* (1971), 25 Ohio St. 2d 53 [54 O.O.2d 191]; *Operation Evangelize v. Kinney* (1982), 69 Ohio St. 2d 346 [23 O.O.3d 315].

While this court has reviewed the direct-use-in-retail-sales exemption on numerous occasions, the issue of the taxable nature of personal property resembling the equipment which is the subject of the case at bar has not previously been determined. However, *Reinhardt Vending Co. v. Porterfield* (1970), 24 Ohio St. 2d 161 [53 O.O.2d 377], is closely analogous and

compels us to reject the preparatory issue raised by the commissioner.[2] Therein, the court reviewed a decision of the Board of Tax Appeals denying a direct-use-in-retail-sales exemption to bill-changing machines located in close proximity to coin-operated vending machines. Even though the record indicated the vending machines functioned independently of the bill-changers, and that some persons used the bill-changers to receive change without making purchases from the vending machines, the court reversed the decision of the board and granted the exemption concluding that the bill-changers were clearly " 'used directly in making retail sales.' " *Id.* at 165.

The bill-changing machines in *Reinhardt* were at least as preparatory as the equipment in the case at bar, since in that case the equipment was used prior to a customer expressing an intent to make a purchase, whereas in the present case the functions accomplished by the equipment are effectuated only after a customer selects an item and manifests an intent to make a purchase. Given the facts that fifty percent of Penney's sales are purchased on credit, and that the equipment is designed to expedite and facilitate customer purchases by providing immediate pricing and credit verifications, we conclude that the board reasonably and lawfully determined that the equipment was used for the "effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to transfer title to or possession of the item sold." R.C. 5739.01(P).

Alternatively, the commissioner maintains even if the equipment is used directly in effecting retail sales, nevertheless the exemption should be denied since this is not the primary purpose for which the equipment is used. According to the commissioner, the equipment is primarily used to perform record-keeping functions for purposes of inventory control, billings, merchandise returns and tax liability. The commissioner contends the performance of these functions by the equipment is neither necessary to, nor remotely connected with, the consummation of a retail sale since the functions are performed subsequent to the completion of a sale.

In *Mead Corp.* v. *Glander* (1950), 153 Ohio St. 539 [42 O.O. 24], the following standard was set forth for determining the taxable status of tangible personal property capable of multiple uses, where one use exempts the property from taxation while the other does not:

"Where equipment is employed principally in a way which excepts its purchase from the sales and use tax, its incidental use otherwise will not destroy such excepted status.

---

[2] The commissioner incorrectly labors under the impression that the equipment is used to determine whether a sale will be made. In fact, the record demonstrates that in addition to verifying the price of an item sought to be purchased, the equipment is used to determine the form of acceptable payment for a sale. Thus, if no credit is to be extended to a customer after a credit check, the customer is certainly at liberty to offer an alternative form of payment.

"The general rule is that 'it is the primary, as distinguished from an incidental, use of the property that determines the question whether it is exempt from taxation.' " (Citations omitted.) *Id.* at 543. See, also, *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137 [48 O.O.2d 169]; *Jewel Companies* v. *Porterfield, supra; Reinhardt Vending Co.* v. *Porterfield, supra.*

As was stated in *Ace Steel Baling* v. *Porterfield,* at 140-141:

" '[P]rimary use' is not merely the quotient of the time that a device is utilized in a taxable, *vis-a-vis* a nontaxable, activity. 'Primary use' connotes primacy in utility or essentiality, in quality as well as quantity. The value of the tool to the product is as important as the time the tool is engaged in fashioning the product."

In response to the commissioner's contention that the electronic components are primarily used for purposes of billing, inventory control and as a data base for merchandise returns, appellee correctly argues that the record demonstrates these functions represent an incidental use of the equipment. During the course of a normal business day the equipment is dedicated from 7:00 a.m. until 9:30 p.m. for the consummation of retail sales by providing instant credit authorizations as well as electronic pricing and merchandise identification. Only after closing hours can the equipment be used for purposes of inventory control, billing and merchandise returns. The use of the equipment for such nonexempt purposes is generally confined to a three-hour period after the store has closed. However, after a store has closed for the evening, the equipment remains operative pursuant to the manufacturer's recommendation that the equipment be left on twenty-four hours daily. Thus, the record fully supports the board's conclusion that the use of the equipment after closing hours for nonexempt purposes was, at most, an incidental use of the property.

Finally, the commissioner contends that Penney's retail sales can be consummated by the use of the previously exempted terminals alone and, as such, the concentrator and computer units are not essential to the consummation of retail sales. By this argument the commissioner is essentially attacking a managerial decision to acquire the aforementioned equipment with which to expedite the consummation of retail sales. If taken to its logical extreme, the commissioner's argument would lead to the conclusion that although this court has recognized the value of a cash register in consummating retail sales (*Reinhardt*), such equipment would nevertheless be taxable since the taxpayer could make change in a less technological manner; *i.e.,* a shoebox. We are compelled to reject this contention under the established principle that this court will not condition a sales or use tax exemption upon managerial prudence in acquiring the property. *Cleveland Electric Illuminating Co.* v. *Lindley* (1982), 69 Ohio St. 2d 71, 74 [23 O.O.3d 118]. Instead, our inquiry is confined to a determination of whether the property is used or consumed directly in making retail sales. After a careful examination of the record before the board, we con-

clude that its determination exempting the subject tangible personal property pursuant to R.C. 5739.01(E)(2) is neither unreasonable nor unlawful. Accordingly, the decision of the board is hereby affirmed.

*Decision affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.