J.C. PENNEY COMPANY, INC., APPELLANT AND CROSS-APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as J.C. Penney Co. *v.* Limbach (1986), 25 Ohio St. 3d 46.]

(No. 85-1830—Decided July 16, 1986.)

*Michael A. Pearl* and *Wayne E. Petkovic,* for appellant and cross-appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee and cross-appellant.

GREY, J. Under the provisions of R.C. Chapter 5739, sales tax, and R.C. Chapter 5741, use tax, different kinds of property are either taxable or exempt. Broadly speaking, the issue in this case is whether or not the Board of Tax Appeals properly applied the provisions of these two chapters to the J.C. Penney catalog operation. Therefore we begin our discussion with a description of that operation.

When a customer wishes to place an order from the J.C. Penney catalog, he may place his order by filling out and mailing in an order form directly to the catalog distribution center. In the alternative, a customer may place his order at the catalog desk of one of the retail stores. A teletype machine relays the order to the catalog distribution center. The customer's order is then filled and either shipped to the customer directly or sent to the retail store for customer pick-up. The Tax Commissioner found the teletype machines were not used directly in making retail sales, and thus were taxable. The board found that they were used in making retail sales and, hence, were non-taxable. It is this issue that is the subject of the cross-appeal.

The Columbus Regional Catalog Distribution Center is designed specifically to facilitate the gathering, packaging and shipping of items ordered through the catalog. The center itself is divided into four areas: the "A" area, the "W" area, the "hanging garments" area and the "central warehouse" area. The "A" area holds the least bulky and most frequently ordered items. The "W" area contains bulky or not easily moved items such as lawnmowers or furniture. The hanging garments area contains those garments whose size or composition requires that they be hung rather than folded. The central warehouse area contains the inventory used to restock the "A" area.

To fill a customer's order in the "A" area an employee, known as a "picker," locates the ordered item, tags it with a computer coded card and places it on a conveyor system where it is transported to the bin containing that particular customer's order. The "W" and hanging garment areas are also used for filling orders. Completed orders are either sent to the shipping area for direct mailing to the customer or boxed and sent to the retail stores for pick-up by the customer at the catalog desk.

J.C. Penney contends that the entire Columbus catalog center is directly used in making retail sales, or that certain portions of the storage and retrieval system are fixtures and part of the real estate, and thus exempt. These issues are the subject of the appeal.

For purposes of clarity, we shall consider the cross-appeal first.

Each retail sale in Ohio is assessed a sales tax under R.C. 5739.02. However, where the item purchased is to be used by the buyer directly in making retail sales the sale is exempt from the sales tax by virtue of R.C. 5739.01(E)(2). "Making retail sales" was defined by R.C. 5739.01(P), during the audit period from January 1, 1974 through December 31, 1977, as:

"* * * the effecting of transactions wherein one party is obligated to pay the price and the other party is obligated to transfer title to or possession of the item sold, but it does not include the delivery of items thereafter nor the preliminary acts of promoting or soliciting the retail sales * * *."

The commissioner in an effort to simplify the determination of whether a purchase qualifies for the R.C. 5739.01(E)(2) exemption promulgated guidelines in former TX-15-11 (now Ohio Adm. Code 5703-9-24), effective April 18, 1974, which in pertinent part provided:

"Tangible personal property which is to be used or consumed directly in making retail sales may, when purchased by a person engaged in making retail sales, be purchased under a claim of exemption. Articles subject to such claim include show cases, equipment and shelves used to display merchandise for sale; store furniture and fixtures; supplies and *equipment used in consummating retail sales*; equipment for use or consumption in storing or preserving goods and merchandise in the sales area; and printed matter which displays or describes and prices the item offered for sale." (Emphasis added.)

As part of the original assessment the Tax Commissioner included as a taxable retail sale J.C. Penney's purchase of teletype terminals used to transmit catalog orders to the Columbus catalog center. On appeal to the Board of Tax Appeals, this assessment was reversed on the authority of this court's holding in *NCR Corp.* v. *Lindley* (1985), 18 Ohio St. 3d 332. In that case, this court exempted "cash registers" which performed a multitude of functions at the point of a customer sale including checking the customer's credit, reading the price of the item to be purchased and assisting in inventory control.

The commissioner contends that the teletype terminals are merely preparatory equipment used prior to the actual retail sale. *NCR Corp.* v. *Lindley, supra,* is clearly analogous to the case here and compels this court to reject the commissioner's pre-sale arguments. The record fully supports the board's reversal of the commissioner's assessment. We, thus, find the commissioner's cross-appeal to be without merit. The board's finding is supported by the record and is thus not unreasonable or unlawful. The commissioner's cross-appeal is not well-taken and the decision of the board on the cross-appeal is affirmed.

J.C. Penney focuses its appeal on the commissioner's tax assessments on the equipment purchased for use at the Columbus Regional Catalog Distribution Center. J.C. Penney claims that the "consummation of a retail sale" in its catalog sales division includes acquiring the items ordered from the "W," "A" and hanging garments areas of the distribution center. J.C. Penney, in its first proposition of law, asserts that it is entitled to a tax exemption on the equipment used in these areas to pick, mark and convey the items ordered. Penney equates the order filling process at the distribution center with the customer selection process at one of its retail stores.

Former Ohio Adm. Code 5703-9-24, in addition to clarifying purchases which qualify for the direct-use-in-making-retail-sales exemption, also propounded those sales to which the exemption does not apply:

"*This exemption does not apply* to equipment used for general heating of the sales area, to fuels for such equipment, to any other supplies not used directly in making retail sales or not specifically used in storing or preserving goods and merchandise in the sales area, to delivery equipment, nor to items used to promote or solicit retail sales. Examples of items to which the exemption would not apply include lumber, wallboard and similar items used as partitions whether in the retail rooms, display windows or elsewhere; janitor and cleaning supplies, fans, decorative items, items used in offices, stock or delivery rooms, outside signs, trucks or equipment used to deliver merchandise sold at retail, and advertising materials other than printed matter which displays or describes and prices the item offered for sale.

" 'Sales area' means any area in which retail sales are customarily made.' " (Emphasis added.)

The Board of Tax Appeals rejected Penney's assertions that the entire folder filling process was comparable to a retail consumer sale. Rather, the board found the purpose of the process was to facilitate delivery after the decision to buy had been made. The board found persuasive the fact that typical retail customers had no access to the "A," "W" and hanging garment areas and the items contained in these areas were not displayed "for sale." Thus, the board upheld the commissioner's assessments with regard to the equipment used by Penney in the order filling process. The commissioner cites this court's decisions in *Revco Discount Drug Centers, Inc.* v. *Lindley* (1983), 6 Ohio St. 3d 172, and *Co-operative Pure Milk Assn., Inc.* v. *Kosydar* (1976), 45 Ohio St. 2d 23 [74 O.O.2d 47], as authority to uphold the board's decision on the equipment. We hold that this court's decisions in *Revco, supra,* and *Co-operative Pure Milk, supra,* are analogous and controlling over the factual situation in the case before this court today. Thus, we affirm the Board of Tax Appeal's decision that Penney's purchases of the equipment used in the order filling process are not entitled to an exemption as equipment used in the consummation of a retail sale.

Penney also challenges the tax assessment placed on the storage and retrieval systems in its central warehouse. Penney contends in its second

proposition of law that the crane and transport cars on rails should be treated as fixtures to the realty and that the purchase of those items should be treated as a construction contract under R.C. 5739.01(B). As such, Interlake, the supplier and installer of the storage and retrieval system, would be the taxable consumer and would be liable for the applicable sales tax assessments.

During the audit period, R.C. 5739.01(B) provided in part:

"* * * Except as provided in section 5739.03 of the Revised Code, a construction contract pursuant to which tangible personal property is or is to be incorporated into a structure or improvement on and becoming a part of real property is not a sale of such tangible personal property, and the construction contractor is the consumer thereof. * * *"

The Board of Tax Appeals held that the stacker cranes and transport cars were not fixtures and Penney was properly assessed. In reaching this decision the board correctly relied on prior case law from this court. In *Zangerle* v. *Republic Steel Corp.* (1945), 144 Ohio St. 529 [30 O.O. 160], this court held that an improvement to real property contemplated something creating a permanent benefit to the land. Later, in *Botkins Feed & Grain Co.* v. *Lindley* (1982), 1 Ohio St. 3d 64, this court vacated a use tax assessment issued against a vendor claimed by the Tax Commissioner to be a construction contractor subject to tax under R.C. 5739.01(B) because the structures were not physically attached to the property and could be removed without significant damage to the structures themselves or the pads on which they rested.

Penney's contention is that the building which houses the stacker crane and transport cars was designed to accommodate them and, thus, this fact makes the crane and cars fixtures to the realty. We reject Penney's argument as unpersuasive. The board's finding with regard to the stacker crane and transport cars is supported by the record and is lawful and reasonable.

The board did find, however, that the rail portion of the storage and retrieval system was a fixture permanently affixed to the realty as provided for in Ohio Adm. Code 5703-3-01(B)(5):

"(B) The following items are hereby classified as real property for the purpose of taxation. * * *

"* * *

"(5) *Permanent crane trackage which is an integral structural part of a building.*" (Emphasis added.)

However, the board denied Penney relief from the assessment. In adhering to our decision in *Interactive Information Systems, Inc.* v. *Limbach* (1985), 18 Ohio St. 3d 309, we determine the Board of Tax Appeals erred in finding that Penney did not prove that the rails in question were subject to the commissioner's assessment. The record contains ample proof that such an assessment took place. We hold that Penney was entitled to have the board remand the assessment with regard to the rails for a determination as to what portion of the assessment was related to the rails. We remand for such a determination.

In its final proposition of law, Penney argues that it was denied equal protection of the laws and due process of law by unlawfully being denied a modification of the sales tax assessment to exclude the cost of installing the conveyor systems it purchased from an out-of-state vendor. Although the installation charges for the conveyor systems were separately stated, the Board of Tax Appeals disallowed the exemption for the reason that R.C. 5741.01(G) does not authorize the exclusion of installation charges from use taxes. In *Timken Co.* v. *Kosydar* (1977), 52 Ohio St. 2d 131 [6 O.O.3d 345], this court construed R.C. 5941.01(G) and held that installation charges were not exempt under the use tax provisions. Penney alleges the inherent inequality of the statutory language of R.C. 5739.01(H) governing the definition of "price" with regard to the sales tax and of R.C. 5741.01(G) governing the definition of "price" with regard to the use tax.

The definition of "price" in R.C. 5739.01(H) read:

"* * * the aggregate value in money of anything paid or delivered, or promised to be paid or delivered, in the complete performance of a retail sale, without any deduction on account of the cost of the property sold, cost of materials used, labor or service cost, interest or discount paid or allowed after the sale is consummated, or any other expense. *Price does not include the consideration received for labor or services used in installing or applying the property sold,* the consideration received as a deposit refundable to the consumer upon return of a container for a beverage, or the consideration received as a deposit on a carton or case that is used for such returnable containers, if the consideration for such services or refundable deposit is separately stated from the consideration received or to be received for the tangible personal property transferred in the retail sale. Such separation must appear in the sales agreement or on the initial invoice or initial billing rendered by the vendor to the consumer. * * *" (Emphasis added.)

The definition of "price" in R.C. 5741.01(G) was:

" 'Price' means the aggregate value in money of anything paid or delivered, or promised to be paid or delivered, by a consumer to a seller in the complete performance of the transaction by which tangible personal property has been purchased for storage, use, or other consumption in this state, *without any deduction on account of the cost of the property sold, cost of materials used, labor or service cost,* interest or discount paid, or any other expense. * * *" (Emphasis added.)

Penney alleges that a juxtaposition of the two statutes above indicates an unconstitutional interference with interstate commerce by levying a higher tax on goods purchased out of state. To support its allegations, Penney relies on *Halliburton Oil Well Cementing Co.* v. *Reily* (1963), 373 U.S. 64. There, the court held that imposing a use tax on essentially installation costs which would have been exempt had the purchase been made within the state was unconstitutional.

While R.C. 5739.01(H) and 5741.01(G) appear to create a constitu-

52

tional question for this court, we feel that we need not address such a constitutional issue. A careful reading of R.C. 5741.02(C)(2) resolves the constitutional conflict between R.C. 5739.01(H) and 5741.01(G).

R.C. 5741.02(C)(2) provided in pertinent part that Ohio's use tax does not apply to "[t]angible personal property, the acquisition of which, if made in Ohio, would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code; * * *" The legislative purpose behind this statutory section is to ensure the use tax has a symmetrical effect on out-of-state purchases as the sales tax has on in-state purchases. Thus, we interpret R.C. 5741.01(G) as expanded by R.C. 5741.02(C)(2) to exempt installation charges on out-of-state purchases in the same manner they would be exempted on an in-state purchase under R.C. 5739.01(H)

The language upon which both the board and commissioner based their rejection of Penney's installation exemption was that portion of R.C. 5741.01(G) set forth above. The same language is found in R.C. 5739.01(H) and does not preclude an installation exemption which is subsequently and separately authorized in that section.

In a footnote to its opinion the Board of Tax Appeals noted:

"Although not determinative to the issue, the Board finds that the kind of installation involved is akin to assembling tangible personal property within the meaning of R.C. 5739.01(E)(2) or fabrication within the meaning of R.C. 5739.01(B). Moreover, the invoices make no distinction between assembling, fabricating or installing the property sold. *Southwestern Portland Cement Co.* v. *Lindley* (1981), 67 Ohio St. 2d 417, 425 [21 O.O.3d 261]."

We hold, therefore, that the board erred in its determination that no installation exemption applies to the use tax here and further, we remand this cause for a determination, in light of the board's footnote, of whether the charges to Penney were for the installation of the conveyor systems in the Columbus catalog center and for a determination of what portion of the aggregate amount of the assessment related to the rails, found here to be fixtures to realty.

*Decision affirmed in part,*
*reversed in part and cause*
*remanded.*

CELEBREZZE, C.J., SWEENEY, LOCHER and WRIGHT, JJ., concur.

HOLMES and DOUGLAS, JJ., dissent.

GREY, J., of the Fourth Appellate District, sitting for C. BROWN, J.