AMERICAN HOME PRODUCTS CORPORATION, APPELLANT AND CROSS-APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as American Home Products Corp. *v.* Limbach (1990), 49 Ohio St. 3d 158.]

(Nos. 88-1252 and 88-1318—Submitted November 7, 1989—Decided March 7, 1990.)

*Jones, Day, Reavis & Pogue* and *Roger F. Day,* for appellant and cross-appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellee and cross-appellant.

*Per Curiam.* Ohio levies the franchise tax on foreign corporations for the privilege of doing business in Ohio, owning or using a part or all of its capital or property in Ohio, or holding a certificate authorizing it to do business in Ohio. R.C. 5733.01(A). Ohio levies the tax on the net worth or net income basis, whichever produces the greater tax. R.C. 5733.06. This appeal concerns the net income basis.

Ohio allocates some income entirely to Ohio under R.C. 5733.051, generally according to the situs of property producing it. Ohio apportions unallocated income under former R.C. 5733.051(A)(8) (now 5733.051[H]) and 5733.05(B) by the three-factor (now four-factor) apportionment formula of R.C. 5733.05(B). The apportionment formula attempts to attribute to Ohio the extent of the corporation's business activity in Ohio and to fairly tax the foreign corporation for the privilege of engaging in business in Ohio. *R.H. Macy & Co.* v. *Lindley* (1986), 25 Ohio St. 3d 218, 219, 25 OBR 279, 280, 495 N.E. 2d 948, 950.

AHP argues that the Due Process Clause of the federal Constitution prohibits Ohio from taxing the investment

income because the investment activity producing the income took place entirely outside Ohio and because the payors were discrete business entities within the meaning of *Mobil Oil Corp.* v. *Commr. of Taxes of Vermont* (1980), 445 U.S. 425, and *ASARCO, Inc.* v. *Idaho State Tax Comm.* (1982), 458 U.S. 307. The commissioner responds that the income was available as working capital, even though it was not needed, and apportioning the income to Ohio did not violate the Due Process Clause.

We hold that AHP's manufacturing, warehousing, and selling in Ohio established a minimal connection with Ohio. AHP's corporate independence from the payors of the investment income broke this nexus for the investment income. AHP's use of some of the accumulated funds in its interstate business re-established a nexus because AHP spent the money to foster its interstate business, of which Ohio was a part. However, AHP's proven lack of need for the amount in excess of operational capital or to secure loans of working capital broke the nexus again. Thus, AHP established that no rational relationship existed between this excess amount and its Ohio business. Consequently, we hold that Ohio may not constitutionally apportion and then tax the disputed investment income.

In *Mobil Oil Corp.* v. *Commr. of Taxes of Vermont, supra,* the United States Supreme Court reaffirmed the established principle that a state may tax a corporation's income if the income is fairly apportioned to the state. Under the Due Process Clause of the Fourteenth Amendment, a state may tax such income if there is a nexus, *i.e.,* a minimal connection, and a rational relationship between the income attributed to the state and the intra-state values of the enterprise. *Id.* at 436-437.

Sufficient nexus exists "* * * if the corporation avails itself of the 'substantial privilege of carrying on a business' within the State * * *." Events that generate income, and that occur outside the state, do not necessarily break the nexus. *Id.* at 437. According to the court, the appellant, to break the nexus, must establish that the income was earned in the course of activities unrelated to the state, a proof of a discrete business enterprise. *Id.* at 439-440. The court concluded its analysis, at 441-442, with this statement:

"We do not mean to suggest that all dividend income received by corporations operating in interstate commerce is necessarily taxable in each State where that corporation does business. Where the business activities of the dividend payor have nothing to do with the activities of the recipient in the taxing State, due process considerations might well preclude apportionability, because there would be no underlying unitary business."

In *ASARCO, Inc.* v. *Idaho State Tax Comm., supra,* the court declared unconstitutional the apportioning of dividends, interest payments, and capital gains received for the ownership interest in corporations in which ASARCO owned major interests, which had no other connection with the state and which ASARCO either could not control or could have controlled but did not. The court stated: "* * * a State may not tax value earned outside its borders." The court said the question was "* * * 'whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return.' " *Id.* at 315, quoting *Wisconsin* v. *J.C. Penney Co.* (1940), 311 U.S. 435, 444.

The *ASARCO* court ultimately distinguished *Mobil Oil Corp.* because Mobil's principal dividend payors were part of Mobil's integrated petroleum business and ASARCO's payors were not. The *ASARCO* court seized on *Mobil Oil Corp.'s* cautioning that all dividend income is not necessarily taxable in each state where that corporation does business. The court reasoned that since ASARCO's subsidiaries had nothing to do with ASARCO in the taxing state, they were discrete business enterprises. The *ASARCO* court, responding to the dissent's argument that ASARCO may use the income for its future operations, pointed to the trial court's finding that ASARCO never had to use the stock as security to borrow working capital, to acquire stock or securities in other companies, or to support any bond issues. Furthermore, ASARCO, according to the trial court, had sufficient cash flow from its mining operations to provide operational capital for its mining and did not rely upon the cash flow from the investment income. *Id.* at 324-325, fn. 21.

The court rejected Idaho's contention that any intangible income should be apportioned if it is acquired, managed, or disposed of for any purpose relating or contributing to the corporation's business. The *ASARCO* court, at 326, stated:

"This definition of unitary business would destroy the concept. The business of a corporation requires that it earn money to continue operations and to provide a return on its invested capital. Consequently *all* of its operations, including any investment made, in some sense can be said to be 'for purposes related to or contributing to the [corporation's] business.' When pressed to its logical limit, this conception of the 'unitary business' limitation becomes no limitation at all. When less

ambitious interpretations are employed, the result is simply arbitrary." (Emphasis *sic.*)

In summary, the court held that ASARCO did not actually exercise potential control over the subsidiaries and that they were discrete business enterprises that, in a business or economic sense, had nothing to do with ASARCO's activities in Idaho. "Therefore, there is no 'rational relationship between the [ASARCO dividend] income attributed to the State and the intrastate values of the enterprise. * * *' " *Id.* at 328.

Thus, we must decide whether AHP's interstate activities have a minimal connection with Ohio and whether a rational relationship exists between the income sought to be attributed to Ohio and the intrastate values of the enterprise.

Our reading of *ASARCO's* footnote 21, at 324-325, proves pivotal in the instant case. The *ASARCO* court noted that the investments were not used as security to borrow working capital, to acquire stock or securities in other companies, or to support any bond issues. It also noted that ASARCO had sufficient cash to operate without relying on the income from the intangibles. Thus, the court did not ground its holding on ASARCO's need to use the money as working capital. Rather, it relied on the trial court's finding that the investments themselves were not used to secure loans of working capital and that the corporation had sufficient operational capital without the income from the investments. Therefore, under *ASARCO*, if AHP does not use the securities to secure loans of working capital or need the funds to operate its business, the funds should not be apportioned. These findings are factual.

The BTA found that AHP did not

pledge the investments to secure loans of working capital and that it did not require the funds directly for operational capital. These findings are supported by an affidavit which the BTA, without objection by the commissioner, admitted into evidence. These factual findings are, thus, based on sufficient probative evidence, and we may not overrule them. *Hawthorn Mellody* v. *Lindley* (1981), 65 Ohio St. 2d 47, 19 O.O. 3d 234, 417 N.E. 2d 1257. Consequently, Ohio may not constitutionally tax the "non-unitary" portion of the investment fund.

As for the commissioner's cross-appeal, she argues that the BTA improperly placed on her the burden to prove that a nexus existed. Indeed, the taxpayer has the burden to prove a lack of nexus. Yet, the commissioner must rebut evidence which breaks the nexus. We conclude that AHP proved the lack of a nexus and that the commissioner did not rebut this proof. We also conclude that the BTA did not burden the commissioner with proving that a nexus existed, but that it found that the commissioner had not rebutted the evidence breaking the nexus.

Accordingly, as to AHP's appeal, we hold that the BTA's decision is unlawful and reverse it. As to the commissioner's cross-appeal, we hold that the BTA's decision is reasonable and lawful and affirm it.

*Decision affirmed in part and reversed in part.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.