[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 119.]

SFA FOLIO COLLECTIONS, INC., APPELLANT AND CROSS-APPELLEE *v*. TRACY, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as *SFA Folio Collections, Inc. v. Tracy*, 1995-Ohio-130.]

*Taxation—Use tax—Out-of-state direct mail retailer not required to collect use tax, when "substantial nexus" with Ohio exists, when—R.C. 5741.01(H)(1) is constitutional.*

(No. 94-431—Submitted May 9, 1995—Decided August 16, 1995.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, No. 91-K-295.

———————————

{¶ 1} SFA Folio Collections, Inc. ("Folio"), appellant and cross-appellee, a New York corporation, is a wholly owned subsidiary of Saks & Company ("Saks"), also a New York corporation. Folio sells clothes and accessories by direct mail, including to customers in Ohio. It mails its catalogs to its customers, and the customers place orders with Folio by telephone, mail, or facsimile machine.

{¶ 2} Customers pay for the merchandise by credit card, including Saks's company credit card, or check. If payment is by credit card, the credit card company guarantees payment. If payment is by check, Folio sends the merchandise after the check has cleared the bank. Consequently, Folio does not enter Ohio to collect payment for the merchandise or on the accounts. Once satisfied of payment, Folio ships the merchandise to the customer via mail or common carrier. It has no facility in Ohio to store or ship merchandise. Folio directs dissatisfied customers to return merchandise to it in New York. It does not accept returns in any other manner.

{¶ 3} Saks also wholly owns another subsidiary, Saks Fifth Avenue of Ohio, Inc. ("Saks-Ohio"). Saks-Ohio operates a Saks Fifth Avenue store in Cincinnati, one in Cleveland, one in Portland, Oregon, and an A/X: Armani

Exchange in Columbus. Saks-Ohio sells merchandise at retail and is a separate profit center from Folio.

{¶ 4} Nevertheless, Saks-Ohio receives, at Folio's direction, copies of Folio's catalogs from Folio's printer. The Cincinnati store manager claimed his store used these catalogs in training its employees and for reference to learn what merchandise Folio sold. According to the testimony, at the Cincinnati store, Saks-Ohio left some catalogs on the counter for free distribution to its customers. According to other testimony, at the Cleveland store, customers asked Saks-Ohio employees for the catalogs, which the store kept under the counter or in its office.

{¶ 5} If the store did not have the item a customer sought, the store searched for the item in a locator service, which could discover whether any Saks retail store in the nation carried the item. The locator service did not search Folio's stock. If it were unsuccessful in locating the item, the store might then refer the customer to the Folio catalogue. Saks-Ohio did not place orders with Folio for its customers, nor did it assist its customers in doing so.

{¶ 6} The Saks-Ohio stores, according to each store's policy, accepted returns of merchandise that Folio had sold. Each store charged the returned merchandise to its inventory and attempted to sell the merchandise itself; it did not contact Folio about the transaction. According to the testimony, such returns were a minimal part of Saks-Ohio's returns.

{¶ 7} The Tax Commissioner, appellee and cross-appellant, assessed Folio use tax on its sales of merchandise to Ohio residents during the first quarter of 1988. He did so because Folio had not collected use tax on these sales. He ruled that, under R.C. 5739.01(B)(3)(e), Folio is a member of an affiliated group including Saks-Ohio and that Folio had substantial nexus with Ohio. He further ruled that Saks-Ohio was an agent of Folio, also, so he concluded, providing substantial nexus with Ohio.

{¶ 8} Folio appealed to the Board of Tax Appeals ("BTA"). The BTA affirmed the commissioner's order. The BTA ruled that Saks-Ohio was not an agent of Folio, but found that R.C. 5741.01(H)(1) created substantial nexus with Ohio, since Folio was a member of an affiliated group including Saks-Ohio. The BTA suggested that this statute was unconstitutional under the Commerce Clause, but ruled that it had no power to invalidate it.

{¶ 9} The cause is now before this court upon an appeal and cross-appeal as of right.

————————————

*Jones, Day, Reavis & Pogue, Maryann B. Gall, Laura A. Kulwick* and *Timothy B. Dyk*, for appellant and cross-appellee.

*Betty D. Montgomery*, Attorney General, and *Barton A. Hubbard,* Assistant Attorney General, for appellee and cross-appellant.

*Baker & Hostetler, Edward J. Bernert, Wayne C. Dabb, Jr.* and *Christopher J. Swift; George S. Isaacson, Martin I. Eisenstein* and *David W. Bertoni, pro hac vice*, urging reversal for amicus curiae, Direct Marketing Association.

————————————

***Per Curiam.***

{¶ 10} According to Clause 3, Section 8, Article I of the United States Constitution, "[t]he Congress shall have power *** to regulate commerce *** among the several States." The United States Supreme Court has interpreted this clause to prohibit certain state actions that interfere with or burden interstate commerce. *Quill Corp.v. North Dakota* (1992), 504 U.S. 298, 112 S. Ct. 1904, 119 L.Ed. 2d 91. In *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed. 2d 326, the court set forth a four-part test to enforce this dormant Commerce Clause provision. A state tax will survive a Commerce Clause challenge if the "tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate

commerce, and [4] is fairly related to the services provided by the State." 430 U.S. at 279, 97 S. Ct. at 1079, 51 L.Ed.2d at 331.

{¶ 11} Folio argues that the taxed activity lacks substantial nexus with Ohio because Folio has no physical presence in Ohio. It maintains that R.C. 5741.01(H)(1) is unconstitutional if it attributes to Folio the physical presence of a separate corporation whose only connection with Folio is that the same parent owns both. It also maintains that Folio and Saks-Ohio are not an affiliated group under the statute.

{¶ 12} The commissioner contends that Folio is part of an integrated unitary retail merchandising business providing sufficient nexus under the Commerce Clause for Ohio to require Folio to collect the tax. He also maintains that Folio's affiliation with Saks-Ohio, which accepts Folio's returns and distributes Folio's catalogs, also provides substantial nexus.

{¶ 13} Additionally, the Direct Marketing Association filed an *amicus* brief in support of Folio. Direct Marketing urges that reading R.C. 5741.01(H)(1) to mean that the out-of-state business must maintain a place of business in Ohio allows the statute to survive constitutional scrutiny.

{¶ 14} In *Quill Corp.v. North Dakota, supra*, the Supreme Court held that the Due Process Clause does not bar enforcement of the state's use tax collection responsibilities on an out-of-state direct mail retailer if the retailer has *minimal contacts* with the state to satisfy due process notice requirements. However, the court held that under the Commerce Clause holding of *Natl. Bellas Hess, Inc. v. Dept. of Revenue of Illinois* (1967), 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505, the retailer must have *substantial nexus* with the state for this collection duty to be valid under the Commerce Clause. According to the *Quill* court, 504 U.S. at 315, 112 S.Ct. at 1914, 119 L.Ed.2d at 108, *Bellas Hess* "*** created a safe harbor for vendors 'whose only connection with customers in the [taxing] state is by common carrier or the United States mail.' Under *Bellas Hess* such vendors are free from

state-imposed duties to collect sales and use taxes." Thus, the *Quill* court reinvigorated the *Bellas Hess* bright-line rule in dormant Commerce Clause cases in holding that the retailer must have a physical presence in the state before the state has substantial nexus to require the retailer to collect the use tax.

{¶ 15} Applying *Quill* to this case, we note former R.C. 5741.17(A) required "[e]very seller of tangible personal property or services who has nexus with this state [to] register with the tax commissioner." R.C. 5741.04 obliges a seller to collect use tax from consumers to whom it sells tangible personal property or services. In former R.C. 5741.01(H)(1), the General Assembly defined "nexus with this state" to mean:

"[T]hat the seller has sufficient contact with this state, in accordance with the Constitution and laws of the United States, to allow the state to require the seller to collect and remit use tax on sales of tangible personal property or services made to consumers in this state. Nexus with this state exists when the seller does any of the following:

"(1) Maintains a place of business within this state, whether operated by employees or agents of the seller, by a member of an affiliated group, as described in division (B)(3)(e) of section 5739.01 of the Revised Code, of which the seller is a member, or by a franchisee using a trade name of the seller[.]"

{¶ 16} Former R.C. 5739.01(B)(3)(e) defined an "affiliated group" as:

"[T]wo or more persons related in such a way that one person owns or controls the business operation of another member of the group. In the case of corporations, one corporation owns or controls another if it owns more than fifty per cent of the other corporation's common stock with voting rights."

{¶ 17} The BTA correctly concluded that Folio, itself, does not have a physical presence in Ohio. The BTA found that Folio is incorporated in New York, has no employees or agents in Ohio, has no bank accounts in Ohio, and performs no credit investigations or collections in Ohio. All advertising and mail order

catalogs and fliers originate outside Ohio. The BTA concluded that the occasional return of Folio's merchandise to Saks-Ohio's stores is common within the retail industry and that Saks-Ohio accepted such merchandise to maintain its customers' satisfaction, not to benefit Folio. However, we disagree with the BTA that the affiliate language of R.C. 5741.01(H)(1) creates substantial nexus for Ohio to require Folio to collect use tax on these catalog sales.

{¶ 18} *Quill Corp.* requires physical presence in the taxing state for that state to require the vendor to collect use tax. Folio, however, has no physical presence in Ohio; moreover, the parent and subsidiary corporations are separate and distinct legal entities. *Mut. Holding Co. v. Limbach* (1994), 71 Ohio St.3d 59, 60, 641 N.E. 2d 1080, 1081. Thus, to impute nexus to Folio because a sister corporation has a physical presence in Ohio runs counter to federal constitutional law and Ohio corporation law.

{¶ 19} We read R.C. 5741.01(H)(1) to conform with the Commerce Clause cases, as that statute mandates, and declare R.C. 5741.01(H)(1) constitutional, a presumed legislative intention. R.C. 1.47(A); see, *e.g., State v. Sinito* (1975), 43 Ohio St.2d 98, 102, 72 O.O. 2d 54, 56-57, 330 N.E. 2d 896, 899; *J.C. Penney Co. v. Limbach* (1986), 25 Ohio St. 3d 46, 25 OBR 71, 495 N.E. 2d 1. We agree with *amicus*, Direct Mailing, that substantial nexus exists under R.C. 5741.01(H)(1) only if the seller maintains a place of business within the state, or its employee, agent, or an affiliate operates the business. However, in this case, Folio does not maintain a place of business in Ohio because Folio sells its merchandise by direct mail without entering Ohio. Saks-Ohio, on the other hand, sells merchandise in retail stores in Ohio, but does not sell any merchandise for Folio. Thus, Folio's selling activity does not have substantial nexus with Ohio because Folio does not have a physical presence in Ohio and because Saks-Ohio, the in-state affiliate, does not own or operate an in-state place of business for Folio.

{¶ 20} As to Saks-Ohio accepting Folio's returns and distributing Folio's catalogs, these contacts might provide minimal connection under due process standards. However, these contacts do not create substantial nexus. Saks-Ohio accepted Folio's returns according to its policy, not Folio's, and charged the returns to its inventory; it did not charge Folio. Moreover, the returns were a minimal part of the returns Saks-Ohio received.

{¶ 21} As for distributing the catalogs, Folio directed up to two hundred copies per issue to be delivered to Saks-Ohio stores, and these catalogs were assumed minimal to Folio's business. We note that, in *Quill Corp.,* 504 U.S. at 315, 112 S.Ct. at 1914, 18 L.Ed. 2d at 108, fn. 8, the Supreme Court concluded that Quill's distribution of licensed software to some of its North Dakota clients, with which the clients could order merchandise, did not meet the substantial nexus requirement of the Commerce Clause. The court agreed with Quill that a few floppy diskettes to which Quill held title might constitute minimal nexus under *Natl. Geographic Soc. v. California Bd. Of Equalization* (1977), 430 U.S. 551, 556, 97 S.Ct. 1386, 1390, 51 L. Ed.2d 631, 637, but that this transfer seemed a slender thread on which to base substantial nexus. *Id.*

{¶ 22} Moreover, we find no validity in the commissioner's unitary-business-entity argument. We discussed this principle in *Am. Home Products Corp. v. Limbach* (1990), 49 Ohio St.3d 158, 160, 551 N.E. 2d 201, 203-204:

"*** Under the Due Process Clause of the Fourteenth Amendment, a state may tax such income if there is a nexus, *i.e.*, a minimal connection, and a rational relationship between the income attributed to the state and the intra-state values of the enterprise. *Id.* [*Mobil Oil Corp. v. Commr. of Taxes of Vermont* (1980), 445 U.S. 425] at 436-437 [100 S.Ct. 1223, at 1231, 63 L. Ed.2d 510, at 520]. Sufficient nexus exists '*** if the corporation avails itself of the "substantial privilege of carrying on a business" within the state ***.' Events that generate income, and that occur outside the state, do not necessarily break the nexus. *Id*. at 437 [100 S.Ct. at

1231, 63 L. Ed.2d at 520].  According to the court, the appellant, to break nexus, must establish that the income was earned in the course of activities unrelated to the state, a proof of a discreet business enterprise.  *Id*. at 439-440 [100 S.Ct. at 1232-1233, 63 L.Ed.2d at 522].  The court concluded its analysis, at 441-442 [100 S.Ct. at 1233, 63 L.Ed.2d at 523-524], with this statement:

"'We do not mean to suggest that all dividend income received by corporations operating in interstate commerce is necessarily taxable in each State where that corporation does business.  Where the business activities of the dividend payor have nothing to do with the activities of the recipient in the taxing State, due process considerations might well preclude apportionability, because there would be no underlying unitary business.'"

{¶ 23} The commissioner contends that this principle should apply to Saks's businesses in Ohio.  He claims that the thrust of Saks's retail efforts creates a unitary business and this, in turn, creates substantial nexus to require Folio to collect the use tax.  However, as Folio essentially notes in its reply brief, this principle applies to due process and whether a corporation physically present in the taxing state must pay tax to such state on all of its business income, including income earned in other states.  In fact, in *Allied-Signal, Inc. v. Dir. of Taxation* (1992), 504 U.S. 768, 778, 112 S. Ct. 2251, 2258, 119 L.Ed. 2d 533, 546, a case applying this unitary-business-attribution theory, the Supreme Court distinguished the type of nexus in the instant case from the type of nexus in a unitary-business case:

"The constitutional question in a case such as *Quill Corp*. is whether the State has the authority to tax the corporation at all.  Present inquiry, by contrast, focuses on the guidelines necessary to circumscribe the reach of the State's legitimate power to tax."

{¶ 24} Accordingly, we reverse the BTA's decision because it is unlawful.

*Decision reversed.*

MOYER, C.J., WRIGHT, RESNICK, PFEIFER and COOK, JJ., concur.

8

DOUGLAS and F.E. SWEENEY, JJ., dissent.

———————————