THE TIMKEN COMPANY, APPELLEE, *v.* KOSYDAR, TAX COMMR., APPELLANT.

(No. 76-980—Decided December 7, 1977.)

*Messrs. Day, Ketterer, Raley, Wright & Rybolt* and *Mr. John F. Buchman,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Michael L. Moushey,* for appellant.

*Per Curiam.* The main issue before this court is whether certain equipment used to cool, circulate and supply liquids, gas and steam used during and in taxpayer's production of steel tubing and roller bearings was excepted from use tax by reason of R. C. 5739.01(E)(2) and 5739.-01(S).

R. C. 5739.01(E)(2) and R. C. 5739.01(S) except certain sales from the sales tax and use tax by excluding them from the definition of retail sales. R. C. 5739.01 provides, in pertinent part:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining, or to *use or consume the thing transferred directly in the production* of tangible personal property * * * for sale * * *." (Emphasis added.)

R. C. 5739.01 provides, in pertinent part:

"(S) 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, the production to complete a product at the same location after such transforming or converting has commenced."

## I.

It has long been established, in cases dealing with R. C. 5739.01 exceptions to sales and use taxes, that this court will attempt to alleviate the ambiguity inherent in the word "directly" by endeavoring to make each decision rendered consistent with previous decisions even if the results seem to represent the drawing of artificial boundaries or lines. *Powhatan Mining Co.* v. *Peck* (1953), 160 Ohio St. 389.

Keeping the admonition of the *Powhatan* opinion in mind, we find components of two of the supply, cooling and recirculating systems in question in this cause to be controlled by previous case law. The first of these systems is the complex of pumps, filters, tanks, water treating equipment and cooling tower which supplies water to cool taxpayer's strand casting machine. In *Union Carbide & Carbon Corp.* v. *Bowers* (1957), 166 Ohio St. 419, and *Ohio Ferro-Alloys Corp.* v. *Bowers* (1960), 171 Ohio St. 283, this court excepted from taxation pursuant to R. C. 5739.01(E)(2) certain drainpipes, water supply lines, water towers and chemicals and a water conditioner used to supply water to cool electric furnaces, burners in lime kilns and motor bearings used by the manufacturers in their production of alloys and metals. Taxpayer's strand casting water supply system functions in a manner virtually identical to that of the systems excepted from sales and use tax in *Union Carbide, supra,* and *Ohio Ferro-Alloys, supra.* We therefore find the components of taxpayer's strand casting water supply system to be excepted from taxation pursuant to the direct use provision of R. C. 5739.01(E)(2).

Taxpayer's system for supplying soluble oil to cool

metal when it is being machined or ground is also controlled by previous case law. In *White Motor Corp.* v. *Kosydar* (1977), 50 Ohio St. 2d 290, this court held a system supplying liquid to spray the interface between tool and block or head during the manufacture of machine parts not to be excepted from taxation as an adjunct pursuant to R. C. 5739.01(S). Since the cooling, circulating and supply system in *White* functioned in a manner virtually identical to that of taxpayer's soluble oil system, we find the order of the Board of Tax Appeals taxing the trenches and oil purifier used in taxpayer's soluble oil system to be reasonable and lawful.

The judgment of the Court of Appeals excepting taxpayer's strand casting system is affirmed; its exception of taxpayer's soluble oil system is reversed.

## II.

The Court of Appeals also execpted from taxation pursuant to R. C. 5739.01(E)(2) or 5739.01(S) the components of several additional circulating systems. These include systems to supply water, oil, chemicals, and gas to wash, harden, clean, and change the chemical makeup of the metal which taxpayer turns into steel tubing and roller bearings, and systems supplying steam to heat and oil to lubricate a washing solution and a mill used in the production line.[1]

---

[1]The items which the Court of Appeals excepted from taxation include: (1) a pump used to move pressurized water to be sprayed on steel after the quenching process; (2) a storage tank and filter used to store and remove impurities from the antirust chemical which is sprayed on the metal during the slushing stage of production; (3) piping and cooling equipment used to cool and recirculate the oil in which the metal is immersed during the quenching stage of production; (4) pipelines used to supply acid used in cleaning metal parts; (5) cooling towers used to cool water used in various stages of roller bearing production; (6) a gas generator used to supply atmospheric gas to the carburizing stage of production; (7) a pump used to pump overflowing quench oil back into the supply system; (8) gas meters, steam condensation lines, water softeners, various tanks and pits, and pumps making up a system used to supply and recirculate steam used to heat solutions which wash roller bearing parts at various stages of production; and (9) a lube oil tank pit used to supply lubricant to the 28-inch mill.

Appellant Tax Commissioner contends that all these components are subject to use tax because "each of these items is a component part of a circulating system" and, as such, is controlled by this court's holding in *White, supra.* We disagree.

The *White* opinion, based on this court's determination that the circulating system in question did not incorporate machinery used to apply coolant directly to the taxpayer's product while it was being machined, finds a circulating system to be taxable. Paragraph three of the syllabus in that opinion states:

"A system for recirculating coolant used in the manufacturing process is not directly used in the production of tangible personal property for sale * * *."

However, earlier case law which we did not narrow, overrule or distinguish in the *White* opinion excepts certain circulating systems from taxation. See *Union Carbide* and *Ohio Ferro-Alloys, supra.* Therefore, the *White* syllabus clearly does not stand for the proposition that components of all circulating systems are subject to sales and use taxes. We must, therefore, look to case law interpreting R. C. 5739.01(E)(2) and 5739.01(S) to determine whether the rest of the circulating systems in the instant cause are subject to taxation.

If equipment or material is to be excepted under R. C. 5739.01(E)(2) it must be directly involved in the manufacturing process. Manufacturing occurs when there is a "transformation or conversion of material or things into a different state or form from that in which they originally existed." *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 170; see also *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407, paragraph four of the syllabus. Equipment or material is "used directly" in manufacture only if it is "used or consumed *during and in the manufacturing or processing period.*" *Youngstown*

---

The Court of Appeals excepted items numbered 1-4 from taxation pursuant to R. C. 5739.01(E)(2). It found items numbered 5-9 to be adjuncts pursuant to R. C. 5739.01(S).

*Building Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363; *Consolidated Coal Co.* v. *Kosydar* (1975), 42 Ohio St. 2d 189, 191. Moreover, for purposes of excepting equipment or material from sales and use taxes under R. C. 5739.01(E)(2), this court will not break up single machines or systems into component parts and segregate such parts into those used directly in production and those that are not. See *Union Carbide, supra,* and *Ohio Ferro-Alloys, supra.* However, even if equipment or material is used or consumed during the manufacturing period, it may still be subject to use and sales taxes if an agent or medium "intervenes" between the equipment or material and the manufacturing process. *General Motors* v. *Bowers* (1959), 169 Ohio St. 361, 365.

All the items which the Court of Appeals excepted from use taxes pursuant to R. C. 5739.01(E)(2) or 5739.01 (S) are components of circulating systems which, pursuant to *Union Carbide* and *Ohio Ferro-Alloys,* we will decide to tax or not tax as a unit. See, also, *Canton Malleable Iron, supra.*[2] All the circulating systems in question are used during the manufacturing process—that is, not before melting or grinding of the ore and tubing has begun and not after the transformation of ore to steel tubing and steel tubing to roller bearings has ended.

The Board of Tax Appeals reasoned, however, that

---

[2]In the *Canton* opinion, which dealt with the question of whether the taxpayer's mold-making system was an adjunct, the system was taxed not because it was a system with some components which weren't on the production line, but because it was not "*either by component part or by the whole,* adjunct to direct use or consumption in production." (*Canton Malleable Iron Co.* v. *Porterfield* [1972], 30 Ohio St. 2d 163, at page 177; emphasis added.) In *White Motor Corp.* v. *Kosydar* (1977), 50 Ohio St. 2d 290, this court found a circulating system not to be an adjunct necessary for production pursuant to R. C. 5739.01(S). That judgment appears to have been based on this court's finding, under the facts of that case, that the circulating system in question did not incorporate machinery used to apply the liquid directly to the taxpayer's product. It does not, therefore, affect the language of *Canton* quoted above.

none of the items in question were used directly in manufacture pursuant to R. C. 5739.01(E)(2) because, in effect, the systems of which those items are a part do not convert taxpayer's ore into steel tubing and its steel tubing into roller bearings without the *intervention* of a liquid or gas compound or a machine.

The board's reasoning is incorrect. Unlike the mold-making machinery in *Ohio Stove Co.* v. *Bowers* (1961), 171 Ohio St. 484, the circulating systems in the instant cause do not make up "an entirely separate and distinct manufacturing process, which, in and of itself has no relationship to the product manufactured by appellant." (*Ohio Stove, supra,* at page 485.) Moreover, no medium or agent *intervenes* between taxpayer's liquid and gas circulating systems and the manufacturing process. The production line machinery which applies the solutions to taxpayer's steel tubing and bearing parts clearly does not "interfere with"[3] either the nonproduction-line components of the circulating systems or the manufacturing process. In addition, that same machinery does not "come between" the circulating systems and the manufacturing process. The term circulating implies a continuous process. Finally, since the circulating systems in question incorporate devices for removing used liquids or gas *from* the production line, there is no logical reason why they do not also incorporate the machines which use those solutions *on* the production line.

The liquids and gas supplied by the circulation systems also do not "interfere with" or "come between" taxpayer's circulating systems and the manufacturing process. The liquids and gas in the instant cause bear the same relationship to the systems which supply them and

---

[3]Webster's Third New International Dictionary defines "intervention" as "the act or fact of intervening." The dictionary provides the following relevant definitions of "intervene":

"1: to enter or appear as an irrelevant or extraneous feature or circumstances * * * 2: to occur, fall, or come between points of time or events * * * 3: to come in or between by way of hindrance or modification * * * [5]b: to interfere * * *."

the manufacturing process which they further as did the water in *Ohio Ferro-Alloys* and the steam in *Youngstown, supra.* In neither case did this court find that the agent supplied by the circulating system and generator *intervened* between that system and manufacture, and we decline to do so in this cause as well.

Since the items helping supply liquids and gas to the production line—items one through seven[4] among those excepted by the Court of Appeals—are components of systems which are used during the transformation process and without the intervention of a medium or agent, we find them to be used directly in manufacturing pursuant to R. C. 5739.01(E)(2). Accordingly, the judgment, but not the reasoning, of the Court of Appeals excepting them from taxation is affirmed.

Two of taxpayer's circulating systems—one supplying steam to heat its washing solutions and one supplying oil to lubricate its 28-inch mill—do not bear as direct a relationship to the manufacturing process as do its other circulating systems. The Court of Appeals excepted these systems from taxation on the ground that they are adjuncts pursuant to R. C. 5739.01(S). The requirements for equipment or material to be excepted as adjuncts "necessary to carry on * * * production" pursuant to R. C. 5739.01(S) are set forth in the syllabus of *Canton Malleable Iron Co.* v. *Porterfield, supra* (30 Ohio St. 2d 163, 170). That syllabus provides:

"In order to obtain an exception from the sales tax pursuant to R. C. 5739.01(S), a claimant must show that the thing for which the exception is sought is an 'adjunct,' used in production to complete a product at the same location and after transformation or conversion has commenced, and, pursuant to R. C. 5739.01(E)(2), must also show that the thing is an adjunct to direct use or consumption in production for sale."

In *Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113, this court found certain devices used to

---

[4]See footnote 1, *supra.*

record the performance of electric furnaces in which iron is melted to be adjuncts pursuant to R. C. 5739.01(S). In doing so, the court, at page 119, used the following reasoning:

"The recording devices meet all these requirements: They are 'auxiliary' or 'subsidiary' to the manufacturing process, for they aid in the operation of the furnaces which are an essential factor in the manufacturing process. They are used at the very place where the furnaces are located; they are used after the transforming (manufacturing) has commenced, for the manufacturing begins, at the latest, when the raw materials are being melted in the furnace; and they are related to direct use in that the furnace to which they are adjunct is used directly in manufacturing."

If we apply the reasoning of the *Ohio Ferro-Alloys* opinion to taxpayer's steam and lubricating systems, it becomes clear that the components of those systems are excepted from sales and use taxation. Like the recording devices in *Ohio Ferro-Alloys*, the items in question are auxiliary or subsidiary because they keep the mill and the washing solution, which are used directly in the manufacturing process, in working order. The circulating systems are used at the manufacturing plant where the washing solution and the mill are used; they are used after the transforming process has begun; and they are related to direct use because the solution which one heats and the mill which the other lubricates are used directly in the transformation of steel tubing into roller bearings.

We therefore find taxpayer's steam and lubricant circulating systems to be excepted from taxation pursuant to R. C. 5739.01(S). The judgment of the Court of Appeals with respect to these circulating systems is affirmed.[5]

### III.

The final issue raised in the instant cause is whether,

---

[5]Having found that taxpayer's steam circulating system is an adjunct pursuant to R. C. 5739.01(S), this court does not need to address itself to the issue, raised by taxpayer, of whether that system is also excepted from taxation under Rule 5703-9-21 of the Tax Commissioner.

pursuant to R. C. 5741.01(G), taxpayer may exclude labor installation costs for a research center which it constructed during the tax audit period. The Court of Appeals found that "Timken, through its failure to pay the sales tax, placed itself within the ambit of R. C. 5741.02(A)." ·

Since that conclusion is in accord with the clear meaning of R. C. 5741.02(C)(1), we agree.⁶

The board found that R. C. 5741.01(G), defining price for use tax purposes, disallows an exception for installation labor costs. The Court of Appeals found that the provision did allow an exception for separately stated installation labor costs which are additional or supplemental to the "complete performance of the transaction by which the tangible personal property has been purchased," and remanded the issue to the Board of Tax Appeals for further fact finding in accordance with its decision.

R. C. 5741.02 levies use tax on the basis of the price paid for the taxable items. Price for use tax purposes is defined in R. C. 5741.01(G), which provides, in pertinent part:

"(G) 'Price' means the aggregate value in money of anything paid or delivered, or promised to be paid or delivered, by a consumer to a seller in the complete performance of the transaction by which tangible personal property has been purchased for storage, use, or other consumption in this state, *without any deduction on account of the cost of the property sold, cost of materials used, labor or service cost, interest, or discount paid, or any other expense. * * *"* (Emphasis added.)

In *Wachendorf* v. *Shaver* (1948), 149 Ohio St. 231, paragraph five of the syllabus, this court stated:

"The court must look to the statute itself to determine

---

⁶R. C. 5741.02 provides, in pertinent part:

"(C) The tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property, nor to the storage, use, or consumption in this state of tangible personal property purchased under the following described circumstances:

· "(1) When the sale of property in this state is subject to the excise tax imposed by sections 5739.01 to 5739.31, inclusive, of the Revised Code, *provided said tax has been paid;*" (Emphasis added.)

legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged, or abridged * * *."

The intent of the General Assembly in R. C. 5741.01 (G) is clear. The statute does *not* exclude installation labor costs from the use tax. The Court of Appeals' judgment with regard to Timken's installation labor costs is reversed, and the order of the Board of Tax Appeals is affirmed.

*Judgment affirmed in part and reversed in part.*

O'Neill, C. J., Herbert, Celebrezze, W. Brown, P. Brown, Sweeney and Potter, JJ., concur.

Potter, J., of the Sixth Appellate District, sitting for Locher, J.