COPPERWELD STEEL COMPANY, APPELLANT, *v.*
LINDLEY, TAX COMMR., APPELLEE.

[Cite as Copperweld Steel Co. *v.* Lindley (1987),
31 Ohio St. 3d 207.]

(No. 86-1482—Decided July 8, 1987.)

*Letson, Griffith, Woodall & Lavelle, Lynn B. Griffith, Jr.,* and *William P. McGuire,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellee.

*Per Curiam.* The issue presented in this case is whether certain equipment purchased and used by appellant during the audit period in the production of its specialty grade steel alloys is exempt from sales and use taxes.

## I

During the period encompassed by the audit, R.C. 5739.01 provided, in pertinent part:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"* * *

"(2) * * * [T]o use or consume the thing transferred directly in the production of tangible personal property * * * for sale by manufacturing, processing, refining, or mining * * *."

The terms "manufacturing" or "processing" are defined within R.C. 5739.01(S), now renumbered (R), which provided:

" 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purposes of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."

Pursuant to the aforementioned statutory sections it becomes necessary to determine the beginning and end of appellant's manufacturing process, for it is well-settled that those items purchased for use prior to the commencement of the manufacturing process, or after completion of the finished product, do not enjoy exempt status under R.C. 5739.01(E)(2). *Southwestern Portland Cement Co.* v. *Lindley* (1981), 67 Ohio St. 2d 417, 21 O.O. 3d 261, 424 N.E. 2d 304; *Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113, 63 O.O. 2d 195, 296 N.E. 2d 533.

The commissioner urges that this court determine whether the assessed items are used directly in manufacturing under the theory that manufacturing does not commence until the raw materials are permanently transformed into a different state or form. Stated otherwise, it is the commissioner's position, at least insofar as the steel industry is concerned, that manufacturing does not commence until the "melt" — the point at which the raw materials enter the furnace and heat is applied thereto. We disagree.

In *OAMCO* v. *Lindley* (1986), 27 Ohio St. 3d 7, 27 OBR 427, 500 N.E. 2d 1379, we rejected a similar argument by the commissioner in relation to the taxability of various articles utilized within an asphalt manufacturing facility. In concluding that "transformation or conversion" commenced prior to the ultimate heat treatment process, or at the mixing stage, we stated:

"In the context of this case, it is readily apparent that the transformation or conversion of material or things into a different state or form occurs primarily in the drum mixer. There, the various ingredients are heated and mixed so that they become the product ultimately sold. *However, the manufacture of the product is, in no sense, either initiated or ended in the drum mixer.*

"As a matter of factual determination, the materials utilized are prepared before they reach the drum mixer. A precise, computerized mixing system composed of various small conveyor belts regulates the flow of aggregates from the bins. The result is a uniform size and weight of aggregate, which is essential to the required standardization of product. Likewise, the feed belt conveyor and scale are utilized to regulate the amount of asphalt cement to be added to a particular weight/volume of aggregate. Without these pieces of equipment there could be no mix specifications, nor constancy of finished product." (Emphasis added.) *Id.* at 8-9, 27 OBR at 428, 500 N.E. 2d at 1380-1381.

Without question, the holding in *OAMCO* specifically negates the commissioner's contention that "transformation or conversion" for purposes of direct use in manufacturing commences at the point that heat is applied to a mixture. Instead, *OAMCO* recognized that the manufacturing process commences when materials are measured or mixed, for "[w]ithout these pieces of equipment, there could be no mix specifications, nor constancy of finished product." *Id.*[1]

---

[1] Effective March 13, 1987, R.C. 5739.01 was amended to provide, in relevant part:

"(R)(1) 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed. Manufacturing or processing begins at the point where the transformation or conversion commences, or at the point where raw materials are committed to the manufacturing process in a receptacle by being measured, mixed, or blended, whichever occurs first, and it ends when the product is completed.

"(2) For the purpose of the exceptions contained in division (E)(2) of this section, things

Alternatively, the commissioner maintains that even if the application of *OAMCO* would operate to exempt some of the taxpayer's previously assessed purchases, nevertheless the court's clarification entry in *OAMCO* v. *Lindley* (1987), 29 Ohio St. 3d 1, 29 OBR 122, 503 N.E. 2d 1388, serves to prohibit its application in this case. Therein, we clarified the question of whether *OAMCO* should receive retroactive or prospective application, and concluded in the syllabus as follows:

"Consistent with the broad authority of state courts to determine whether their decisions shall operate prospectively only, as recognized by the United States Supreme Court in *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, the court hereby declares that its decision in this case shall, with the exception of the subject litigants, only receive prospective application to transactions occurring subsequent to the date of the issuance of the decision on rehearing. Accordingly, this decision will have no application to transactions occurring prior to this date, regardless of whether such transactions were the subject of litigation pending before any administrative body or court as of the above-noted date [November 26, 1986]."

Appellant does not argue with the meaning of our clarification in *OAMCO* v. *Lindley* (1987), *supra,* but argues that its effect is to treat similarly situated taxpayers differently. In principle, appellant relies upon Justice Harlan's statements in *Desist* v. *United States* (1969), 394 U.S. 244, dissenting at 258-259, that "* * * when another similarly situated defendant comes before us, we must grant the same relief or give a principled reason for acting differently. We depart from this basic judicial tradition when we simply pick and choose from among similarly situated defendants those who alone will receive the benefit of a 'new' rule of * * * law." Accord *United States* v. *Johnson* (1982), 457 U.S. 537.

Continuing, appellant makes the arguable point that our clarification in 29 Ohio St. 3d 1, 29 OBR 122, 503 N.E. 2d 1388, overlooks all appeals pending before the BTA or this court at the time of our decision on rehearing in November 1986. It is asserted that by making *OAMCO* prospective to transactions occurring subsequent to November 26, 1986, that the tax-

---

used or consumed directly in manufacturing or processing include the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after transforming or converting has commenced and before it has ended. Adjuncts include, but are not limited to, machinery and equipment that generates heat or power for production processes and foundations and supports for machinery and equipment used during manufacturing. Machinery and equipment used before manufacturing begins or after manufacturing ends as described in this division are neither used directly in manufacturing nor as adjuncts.

"(3) For the purpose of the exceptions contained in division (E)(2) of this section, the fact alone that machinery or equipment, supplies, or services are necessary, essential, or crucial to the manufacturing process does not mean they are used directly in the manufacturing process or as an adjunct."

payer in *OAMCO* gained a happenstance windfall simply because its appeal was decided before the other pending appeals raising the identical issue. Viewed in this context, a litigant, whose opponent obtains permission to file its brief beyond the time constraints set forth in the Rules of Practice of the Supreme Court, could be prejudiced simply because another appeal subsequently filed, raising the same issue, is fully briefed and ready for oral argument before the court.

We agree with appellant that it would not be equitable for *OAMCO* not to be extended to those appeals pending in this court at the time of our decision therein. Cf. *Chevron Oil Co.* v. *Huson* (1971), 404 U.S. 97, which, although distinguishable from the instant case, demonstrates some of the inequities that can apply regarding the retroactivity of a judicial holding. Soon after our decision in *OAMCO,* the General Assembly enacted Am. H.B. No. 159, effective March 13, 1987. Section 4 of that Act declares it "to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety" in order to "* * * protect the state from any potential revenue loss resulting from" the decision in *OAMCO.*

Without question, the General Assembly is concerned with the effect *OAMCO* will have on potential tax revenues. At the time of our decision in November 1986, thirteen tax-related appeals were pending before this court.[2] Of those cases, perhaps one half present an issue to which *OAMCO* would be applicable. In view of the assessments at issue in these limited cases, and the amounts of tax revenue involved, we do not deem the application of *OAMCO* to have a significant impact upon the state's tax revenues. On the other hand, given the numerous cases pending before either the BTA, or the commissioner for purposes of reassessment, the retroactive application of *OAMCO* could have a significant impact upon the state's tax revenues. Since the General Assembly did not make Am. H.B. No. 159 retroactive (see R.C. 1.48), and because of its heretofore expressed concern about the financial impact created by *OAMCO,* we conclude that *OAMCO* will only be retroactively applied to those cases pending in this court at the time of our decision on rehearing in November 1986. Since appellant's appeal was pending at that time, the principles of *OAMCO* are applicable to its appeal.

## II

### A

Appellant contends that various cranes, weighing bins, scales and clamshell buckets are all used either directly in manufacturing or as adjuncts thereto, and should therefore have been exempt from taxation pur-

---

[2] As of November 26, 1986, the following tax-related appeals were pending before the court:

Case Nos. 85-1955, 85-1998, 86-191, 86-680, 86-749, 86-855, 86-1070, 86-1334, 86-1482, 86-1852, 86-1886, 86-1931, and 86-1989.

suant to R.C. 5739.01(E)(2) and (S). The record demonstrates that appellant uses various containers, primarily charging, clamshell and scrap buckets, in which to weigh and mix its raw materials prior to placement in the furnace. Various large cranes, equipped with scales or other similar devices, transport the buckets and ladles from the location where the raw materials are stored and measured until they are placed in the furnace.

As noted earlier, *OAMCO* recognizes that the manufacturing process commences upon the measuring or mixing of raw materials, for without this process there would be no mix specifications or consistency in the finished product. In addition, it is not realistic to contend that transformation has not commenced when materials are mixed or combined, but not yet heated. Under this analysis, various containers utilized by appellant (including charging, clamshell and scrap buckets) must be viewed as exempt from taxation under R.C. 5739.01(E)(2), as directly used in manufacturing. The weighing bins and scales are used to regulate the amount of raw materials in order to assure a precise finished product. Since manufacturing commences upon the measuring or mixing of raw materials, these items should have been exempted as being used directly in manufacturing. The cranes, to which the buckets, scales and load cells are attached, should likewise have been exempted since once the manufacturing commences, they have become adjuncts used during and in, and necessary to continue production. R.C. 5739.01(S).

### B

In its next two propositions, appellant contends that the BTA and the court of appeals erred when various alleged repair items, including millwright and masonry repair tools, various cranes, lighting and electrical equipment, material handling equipment and wiping rags, were not exempted from taxation. Appellant bases entitlement to exemption for these items, in part, upon Ohio Adm. Code 5703-9-21, which provides:

"Persons engaged in the production of tangible personal property for sale by manufacturing, processing, assembling or refining, may claim exemption when purchasing:

"* * *

"* * * Machinery, equipment, and other personal property used to repair or maintain machinery, equipment and other personal property * * *."

Both the BTA and the lower court rejected this contention on the basis that appellant failed to affirmatively demonstrate that the purchased items effectuated repairs on machinery, equipment or other personal property justifying the exemption. We agree.

It is well-settled that in order to overcome the statutory presumption of taxability, the taxpayer must present sufficient evidence to demonstrate entitlement to exemption. *Craftsman Type, Inc.* v. *Lindley* (1983), 6 Ohio St. 3d 82, 6 OBR 122, 451 N.E. 2d 768; *May Company* v. *Lindley*

(1982), 1 Ohio St. 3d 6, 1 OBR 32, 437 N.E. 2d 295. Although some of these items may arguably have been eligible for exemption, the taxpayer's witness gave only a cursory explanation regarding their use. Even the taxpayer admits that testimony regarding many of these items "may have been brief." Accordingly, and in view of the record, we conclude that appellant failed to satisfy its burden of demonstrating entitlement to an exemption for these articles.

## C

Appellant's manufacturing process includes a pickling process integral to the production of its final saleable product. The court of appeals reasoned that the acid tanks in the pickling process were exempt from taxation under *Standard Pressed Steel Co.* v. *Lindley* (1980), 62 Ohio St. 2d 268, 16 O.O. 3d 318, 405 N.E. 2d 281, but that equipment used in storing, neutralizing, and disposing of acid was not exempt.

The record demonstrates that the equipment for which the taxpayer seeks exemption is primarily used to handle a waste product (namely acid) after it can no longer be used for pickling. At this juncture, the acid is not used in the manufacturing process and the treating equipment is taxable. See, *e.g.*, *Powhatan Mining Co.* v. *Peck* (1953), 160 Ohio St. 389, 52 O.O. 246, 116 N.E. 2d 426.

Although appellant places great reliance upon the holding in *Timken Co.* v. *Kosydar* (1977), 52 Ohio St. 2d 131, 6 O.O. 3d 345, 369 N.E. 2d 1211, we find such reliance is misplaced. Therein, the system at issue was closed, recirculating, and performed functions in addition to the service of machines involved in the instant case. Conversely, the system which the taxpayer seeks to exempt consists primarily of a series of machines storing or treating the acid outside the manufacturing process. We agree with the court of appeals' determination that while the acid is used directly in the manufacturing process and the tanks are adjacent thereto, the acid storing, neutralizing and disposal equipment is, at best, an adjunct to an adjunct and, hence, not entitled to exemption. *Powhatan Mining Co.* v. *Peck, supra.*

Appellant further contends that water lines and pumps used to transport water from a river into its manufacturing facility should have received a direct use exemption. The water which is transported is used to cool machinery used in the production of steel alloys. As noted by the commissioner, that portion of the water lines and pumps held subject to taxation is not part of the system which branches off and applies water to the transformer or furnace. These items clearly fall outside the scope of the direct use exemption as illustrated in *White Motor Corp.* v. *Kosydar* (1977), 50 Ohio St. 2d 290, 4 O.O. 3d 451, 364 N.E. 2d 252.

## D

In its next proposition of law, appellant contests the determination

that guardrails and handrails allegedly purchased for the protection of employees were not exempted from sales and use taxes. At the time of the audit, Ohio Adm. Code 5703-9-21(L), now renumbered (N), provided that sales tax was not applicable to the following purchases:

"Articles used primarily for the protection of *a production employee* from a physical danger of the operation in which he is engaged, when such article is installed, or furnished to and used by the employee for his personal protection without charge by the employer." (Emphasis added.)

The BTA has construed the foregoing provision as applicable in context with the direct use provision of R.C. 5739.01(E)(2). Thus, an element of directness must be present, in that the safety device for which exemption is sought must provide protection to production employees. In the instant case, the record does not affirmatively demonstrate that these safety devices were provided for production employees. As such, appellant has failed in its burden to demonstrate entitlement to the exemption. *May Company* v. *Lindley, supra.*

Appellant's final contention centers upon equipment used to transport scrap to storage, and slag pots used to transport slag to an area for reclamation. The record demonstrates that the scrap is not reprocessed at the point it is accumulated but, instead, is stored as a raw material for later use in manufacturing. Clearly this transportation equipment is used after the point of manufacture and, accordingly, is not exempt. See *OAMCO* v. *Lindley* (1986), *supra.*

In regard to the transportation equipment for the slag by-product, it is undisputed that the slag pots transport the by-product to the Harsco Corporation, which then processes metallics within the slag for sale. Since Harsco, and not Copperweld, is processing the slag, appellant is merely transporting a by-product to another entity, which then utilizes the material to produce a saleable product. Without question, this use does not satisfy the requirements imposed for direct use under R.C. 5739.01(E)(2).

For the foregoing reasons, the judgment of the court of appeals is affirmed in part and reversed in part, and the cause is hereby remanded to the Board of Tax Appeals for modification consistent with this opinion.

> *Judgment affirmed in part,*
> *reversed in part, and*
> *cause remanded.*

MOYER, C.J., LOCHER, HOLMES, WRIGHT and H. Brown, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

DOUGLAS, J., dissenting. I respectfully dissent for two reasons.

First, the test to be used in applying the provisions of R.C. 5739.01(E)(2) is clear. When an exception from tax is claimed for a par-

ticular item, that item, in order to be granted non-taxable status, must be used during the period in which materials undergo a conversion or transformation in state or form and the item must be used to effect that change. If the item in question is used prior to the commencement of, or after the termination of, any change in state or form, such item is not entitled to be granted excepted status. After a thorough review of the items in question in this case and properly applying this test, a unanimous court of appeals rendered its decision. That judgment should be affirmed.

Second, in *OAMCO* v. *Lindley* (1987), 29 Ohio St. 3d 1, 29 OBR 122, 503 N.E. 2d 1388, we held:

"Consistent with the broad authority of state courts to determine whether their decisions shall operate prospectively only, as recognized by the United States Supreme Court in *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, the court hereby declares that its decision in this case shall, with the exception of the subject litigants, only receive prospective application to transactions occurring subsequent to the date of the issuance of the decision on rehearing. *Accordingly, this decision will have no application to transactions occurring prior to this date, regardless of whether such transactions were the subject of litigation pending before any administrative body or court as of the above-noted date.*" (Emphasis added.)

This case falls squarely within the emphasized language and, accordingly, any reliance of appellant on *OAMCO* v. *Lindley* (1986), 24 Ohio St. 3d 124, 24 OBR 347, 493 N.E. 2d 1345, is misplaced. If the majority chooses not to apply the provisions of the 1987 *OAMCO* clarification to the case at bar, then the 1987 *OAMCO* decision should be modified—not ignored or attempted to be explained away. The court of appeals' judgment should be affirmed.

SWEENEY, J., concurs in the foregoing dissenting opinion.