GENERAL MOTORS CORPORATION, GENERAL MOTORS ASSEMBLY DIVISION, APPELLANT AND CROSS-APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as General Motors Corp. *v.* Limbach (1989), 44 Ohio St. 3d 115.]

(No. 87-1954—Submitted January 11, 1989—Decided July 26, 1989.)

transfer any tangible personal property to it. Thus, according to GM, the amounts reflected in those billings are not subject to sales tax.

During the audit period, personal services *per se* were not taxed. R.C. 5739.01(B) provides:

"* * * Other than as provided in this section 'sale' or 'selling' do not include professional, insurance, or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made."

As noted previously, the charges collected by Gilbane for performing as the construction manager are not at issue. Rather, the assessment involves transactions in which tangible personal property was transferred from the contractors through Gilbane to GM, in the form of the completed renovations to GM's assembly plant. GM received tangible personal property in these transactions. The transactions are taxable unless GM correctly asserts an exemption, which it has not done. Contrary to GM's arguments, the commissioner did not assess tax on a "personal service" but rather on the transfer, through Gilbane, of tangible personal property and, therefore, the BTA's decision is neither unreasonable nor unlawful.

*Carlile, Patchen, Murphy & Allison* and *Robert J. Kosydar,* for appellant and cross-appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Mark A. Engel* and *Barton A. Hubbard,* for appellee and cross-appellant.

*Per Curiam.*

## I

## Construction Manager's Billings

GM argues that Gilbane, by acting as construction manager, performed a "personal service" for GM and did not

## II

## Engineering Drawings and Designs

Regarding the engineering drawings and designs, the BTA concluded that GM sought "* * * the engineers' intellectual effort reduced to a tangible graphic form." The BTA found that the true objects were the end-products of this effort, *i.e.,* the designs and drawings, and that these products could not be considered inconsequential. GM argues that the true objects were the personal services of the engineers.

These drawings and designs are essentially the same as the items considered in *Emery Industries, Inc.* v. *Limbach* (1989), 43 Ohio St. 3d 134, 539 N.E. 2d 608. Under the authority of that case, we reverse the BTA.

## III
### Steam Recirculation System

According to R.C. 5739.01(E)(2), sales of items used or consumed directly in the production of tangible personal property for sale by manufacturing are not retail sales, and are therefore excepted from the tax levied under R.C. 5739.02. "Manufacturing" was defined, during the audit period, in R.C. 5739.01(S) (now redefined in division [R]) as:

"* * * the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced." See 138 Ohio Laws, Part II, 4453.

In *Timken Co.* v. *Kosydar* (1977), 52 Ohio St. 2d 131, 6 O.O. 3d 345, 369 N.E. 2d 1211, this court held that "* * * gas meters, steam condensation lines, water softeners, various tanks and pits, and pumps making up a system used to supply and recirculate steam used to heat solutions which wash roller bearing parts at various stages of production[,]" *id.* at 135, 6 O.O. 3d at 348, 369 N.E. 2d at 1214, fn. 1, did not bear a direct relationship to manufacturing, but were exempt as adjuncts under former R.C. 5739.01 (S).

According to *Timken*, they were adjuncts because (1) they were auxiliary or subsidiary to the manufacturing process since they kept the mill and the washing solution, which were used directly in manufacturing, in working order, (2) they were used at the manufacturing plant where the mill and the washing solution were used, (3) they were used after the transforming process had begun, and (4) they were related to direct use since the solution which it heated was used directly in transforming steel tubing into roller bearings. *Id.* at 140, 6 O.O. 3d at 350, 369 N.E. 2d at 1217. The uses of the systems here and in *Timken* are nearly identical. Thus, under *Timken,* the BTA's decision is reasonable and lawful.

Accordingly, that portion of the BTA decision which assessed engineering designs and drawings is reversed, but the remainder of the decision is affirmed.

*Decision affirmed in part and reversed in part.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

DOUGLAS, J., concurring in part and dissenting in part. The onslaught against the Tax Code by a majority of this court continues. Even though this appears to be just another small chip in the protective coating crafted for the taxing statutes by the General Assembly, each successive chip continues to weaken the overall fabric and efficacy of the entire code. It appears the theory of the majority is fast becoming "give a little something to both sides and keep everybody happy." It is a dangerous game the majority continues to play!

I would affirm the decision of the BTA in all respects.