### City of BOWLING GREEN,

v.

### BOGGS.

Bowling Green Municipal Court,
Wood County, Ohio.

No. 95–TR–C–02525.

Decided Oct. 24, 1995.

---

*Mark D. Tolles,* City Prosecutor, for plaintiff.

*Halleck & Halleck* and *Peter T. Halleck,* for defendant Duane C. Boggs.

---

THOMAS J. MCDERMOTT, Magistrate.

This matter comes on for defendant Duane C. Boggs's motion to terminate ALS (administrative license suspension) on the basis that the suspension is unconstitutional because of the decision in *State v. Knisely* (Aug. 18, 1995), Huron App. No. H-94-044, unreported, 1995 WL 490937, certified conflict accepted in (1995), 74 Ohio St.3d 1407, 655 N.E.2d 186.

For the reasons stated below, the motion will be overruled.

### Facts

Defendant was arrested on April 14, 1995, and charged with DUI under Bowling Green Ordinance ("BGO") 73.01(A)(1). He was also charged with a lane violation, BGO 72.10, and failure to yield the right of way at an intersection, BGO 72.25.

At the time of his arrest, after being informed of the consequences, defendant refused to submit to a chemical test to determine the alcohol content in either his blood, breath, or urine. Pursuant to R.C. 4511.191(D)(1)(a), the arresting officer notified defendant that his license was suspended because of his refusal. Pursuant to R.C. 4511.191(E)(1)(a), defendant's right to drive was suspended by the Bureau of Motor Vehicles for one year.

While this case was pending before the court, defendant was granted occupational driving privileges after an initial thirty-day period had expired. On August 7, 1995, the DUI charge was dismissed, and defendant entered pleas of no contest to the other two charges. The court extended defendant's occupational driving privileges through April 13, 1996, for the duration of his one-year refusal suspension.

On August 18, 1995, the Sixth District Court of Appeals ruled, in *State v. Knisely,* Huron App. No. H-94-044, unreported, 1995 WL 490937, that "to the extent that it mandates an instant license suspension," R.C. 4511.191(D)(1) is a nullity, as violative of the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

*Conclusions of Law*

1. *Knisely* Does Not Apply Retroactively

Defendant would have this court, if it were to grant his motion, terminate, by a retroactive application of *Knisely,* administrative license suspensions imposed in all cases prior to August 18, 1995, including the ALS in this case.

■ State courts have broad authority to determine whether their decisions shall operate prospectively or retrospectively. *Great N. Ry. Co. v. Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360; *Copperweld Steel Co. v. Lindley* (1987), 31 Ohio St.3d 207, 210, 31 OBR 404, 406, 509 N.E.2d 1242, 1245–1246. Justice Cardozo, in *Great Northern,* noted that *the highest court of a state* may make a choice for itself whether the new rule declared by it shall operate prospectively only, or also to past transactions.

■ The test used to make this determination is found in *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. Contrary to Justice Cardozo's "highest court of a state" language, appellate courts have also utilized these tests to retroactively apply their decisions. *Anello v. Hufziger* (1988), 48 Ohio App.3d 28, 547 N.E.2d 1220, poses this test in three questions, which must all be answered negatively to apply a decision retroactively:

1. Is the decision one of first impression that was not clearly foreshadowed?

2. Will retrospective application retard the operation of the statute, considering its prior history, purpose, and effect?

3. Will the retrospective application produce substantial inequitable results ("injustice or hardship")?

■ The answer to the first question is clearly affirmative. The Sixth District Court of Appeals is the first court in the state, at either the trial or appellate level, to have ruled that the roadside, "on-the-spot" suspension of a suspected DUI driver was constitutionally infirm as violative of that driver's due process rights.

The answer to the second question is clearly in the affirmative. Certain drunk drivers (those with positive tests or who have refused a test) have legislatively been determined to be a threat to public safety if permitted to drive during the pretrial phase of their DUI cases.

Similarly, the third question must also be answered affirmatively. Retroactive application of this ruling, especially in light of the fact that the Ohio Supreme Court has not made a final determination on the matter, would result in chaos. The Bureau of Motor Vehicles would have to determine which suspensions it had imposed under the law were on those drivers suspended by actions in the Sixth

Appellate District. Also, reinstatement fees that have been paid have already been disbursed, per R.C. 4511.191(L), to such purposes as the Drivers' Treatment and Intervention Fund, a reparations fund, the Indigent Drivers Alcohol Treatment Fund, etc. In addition, how would those who have already served an ALS be made whole?

The United States Supreme Court has held that the actual existence of a statute which had been declared unconstitutional is an operative fact which cannot justly be ignored, and the question of the effect of its unconstitutionality cannot be disposed of by merely applying a principle of absolute retroactive invalidity. *Chicot Cty. Drainage Dist. v. Baxter State Bank* (1940), 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329.

Federal courts were divided on the retroactive application of the holding in *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, until the matter of prospective application only was conclusively settled in *Linkletter v. Walker* (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601.

The matter of retroactive application of a finding of unconstitutionality can no longer be an automatic decision. The California Supreme Court so recognized when it stated:

"We no longer subscribe to that 'splendid myth' of Blackstone that all constitutional interpretations are eternal verities that stretch backwards and forwards to infinity." *In re Lopez* (1965), 62 Cal.2d 368, 42 Cal.Rptr. 188, 398 P.2d 380, certiorari denied (1966), 384 U.S. 1016, 86 S.Ct. 1929, 16 L.Ed.2d 1038, rehearing denied (1966), 385 U.S. 891, 87 S.Ct. 16, 17 L.Ed.2d 123. See, also, *Ostwald v. State* (Wyo.1975), 538 P.2d 1298, for a thorough analysis of the retroactivity question.

A similar issue to the one now under consideration was addressed when the United States Supreme Court revisited its *Chicot* decision in 1977. In *Dobbert v. Florida* (1977), 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344, the defendant was sentenced to death for murder. The Supreme Court of Florida, in another case, subsequently found the death penalty statute unconstitutional in light of *Furman v. Georgia* (1972), 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. Dobbert claimed that since the law in effect at the time of his actions was later found to be unconstitutional, there was no "valid" death penalty in effect in Florida as of the date of his actions. The Supreme Court did not buy this argument, and held:

"Whether or not the old statute would, in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the

State ascribed to the act of murder." 432 U.S. at 297, 97 S.Ct. at 2300, 53 L.Ed.2d at 358–359.

The state of Ohio certainly considers drunk driving to be an important issue to its citizens, and the most recent revisions in the DUI law reflect the legislature's concern. In the instant case, defendant Boggs received even more warning about the consequences of his refusal than simply that the law was on the books: he was informed of those consequences by the officer at the scene and acknowledged his receipt of that information in writing.

*Knisely* did not find any fault with the legislative intent to address the very important social problem of dealing with drunk drivers, nor did it address the ALS requirement of mandatory suspensions for a refusal. These are important parts of the scheme and reflect the view of the legislature on the severity of the problem in the state.

The court of appeals did not mandate the drastic action of retroactively terminating all administrative law suspensions, although it was within its power to do so. In the absence of such a mandate, this court will not do so either.

## 2. *Res Judicata*

 Defendant has moved to have his ALS terminated. However, this case is completed: defendant paid his fine and costs and the time for appeal has tolled. The principle is well settled in Ohio that when these conditions are met, the case is over. *State v. Wilson* (1975), 41 Ohio St.2d 236, 70 O.O.2d 431, 325 N.E.2d 236; *Bowling Green v. Middleton* (1984), Wood App. No. WD–84–71, unreported.

In *Reynoldsville Casket Co. v. Hyde* (1995), 514 U.S. ——, 115 S.Ct. 1745, 131 L.Ed.2d 820, the United States Supreme Court held, in overruling the Ohio Supreme Court, that new legal principles, even when applied retroactively, *do not apply to cases already closed.*

States have also ruled in a similar fashion. *State v. Campbell* (1995), 125 Wash.2d 797, 888 P.2d 1185 (constitutional rulings in criminal cases apply retroactively to all cases not yet finally decided on direct review); *State v. Jones* (1994), 312 S.C. 100, 439 S.E.2d 282 ("new rule of criminal law * * * should be applied retroactively only to those cases pending on direct review at time new decision is issued"); *State v. Koch* (1993), 175 Wis.2d 684, 499 N.W.2d 152 ("new rule * * * to be applied retroactively to all cases * * * pending on direct review or not yet final * * *"); *State v. Erwin* (Mo.1993), 848 S.W.2d 476 ("decision [that statute] violates due process * * * applies to cases tried in future and to cases subject to direct appeal where issue was preserved").

### 3. Defendant Has Never Raised a Due Process Argument

Defendant had the same opportunity to raise the same issues as Knisely did, either in the trial court or by review in the appeals court. But he never made what, for Knisely, was the winning argument: due process. Since this case was not pending before the Sixth District Court of Appeals when *Knisely* was handed down, that ruling did not automatically affect defendant. In fact, this case had already been completed in the trial court: defendant is not on probation and he paid his fine and court costs on the two charges the same day he entered his pleas.

The issue, said the United States Supreme Court in *Chicot*, is one of *res judicata:*

"It appears that the proceedings in the [trial court] * * * were conducted in complete conformity to the statute. The Circuit Court of Appeals observed that no question had been raised as to the regularity of the [trial] court's action. * * * As parties, [petitioners] had full opportunity to present any objections to the proceeding, not only as to its regularity, * * * but also as to the validity of the statute under which the proceeding was brought. * * * If the general principles governing the defense of res judicata are applicable, [petitioners], having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it." *Id.,* 308 U.S. at 375, 60 S.Ct. at 319, 84 L.Ed. at 333.

In the instant case, there is no contention by defendant that the proceedings were not conducted in complete conformity to the statute as it stood at the time. There is no allegation of any irregularity of this court's actions. At pretrial, the defendant had the opportunity, by motion, to raise constitutional issues. Defendant raised the double jeopardy issue and an equal protection argument, which were overruled by the trial court.

Defendant's motion to terminate ALS is not well taken.

*Recommendation to deny.*